Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to give their attention so the Court is now sitting. God save the United States and this Honorable Court. Thank you. We will begin this morning. We have two cases and we'll begin with Tyree v. United States and Mr. Ballinger, whenever you're ready, you may begin. Thank you, Your Honor. May it please the Court. My name is Scott Ballinger. I'm the director of the Appellate Litigation Clinic at the University of Virginia School of Law and it's my pleasure to introduce Ms. Jana Minnick and Mr. Raymond Ganz who will be presenting argument for Mr. Tyree today. Ms. Minnick will take the opening argument and Mr. Ganz will deliver any rebuttal. Very well. Thank you and thank you. Is it Minnick or Minnick? Ms. Minnick, can you hear me? Yes, sorry about that. It's Minnick. Minnick, okay. Very well. You may begin if you wish. Thank you, Your Honor and may it please the Court. This case should be remanded again because the district court misconstrued the discretionary function exception, effectively presuming that everything a prison guard does is a protected exercise of policy discretion and immune from challenge. This is not and cannot be the law. Three points bear this out. First, case law recognizes a difference between choices that are inherently bound up in considerations of economic and political policy on the one hand and violations of facially mandatory duties on the other. And this case falls into the second category. Second, the fact that every mandatory policy contains some implicit penumbral discretion does not automatically mean that apparent violations of mandatory duties because of negligence or inattention are covered by the DFE. And third, Tyree's complaint plausibly alleges a violation of mandatory duty because of negligent inattention on the limited facts we know. So first, looking at these case law categories, the case law draws a distinction between cases challenging what was obviously a policy-infused choice and cases involving violation of a facially mandatory duty. Policy-infused choices are things like an FDA decision to approve a vaccine or choosing the materials to use for highway guardrails or determining what cells were used. So, Tyree, what is a facially mandatory duty in this case? And if so, what was it? Yes, your honor. So, looking at the Bureau of Prison Standards of Conduct, we see that there's a mandatory duty that employees respond immediately, effectively, and appropriately during all emergency situations. And then we also have post-orders that we know exist and that we know contain particular requirements regarding assault of inmates because they're required to exist and contain those instructions. As I know you're aware, counsel on Tyree's side has not had an opportunity to view those post-orders, but we do know that they must exist and they must contain instructions of that kind. Well, we have looked at the post-orders, and from what I can tell, they don't help you very much. But in terms of the Bureau of Prisons rule that you cited, to respond immediately, tell us how that's a determinable ministerial act. Well, yes, your honor. So, to respond immediately, granted, isn't the same thing as giving a warrant, but it includes responses that can't be characterized as immediate. So, what that would mean is if a guard sees an alarm and simply chooses not to respond for some reason not related to competing duties, then that would be to fail to respond immediately. Now, obviously, there are competing concerns that a prison guard has. For example, also responding effectively and appropriately. So, to say that a guard has the mandatory duty to respond immediately isn't to say that, you know, he needs to drop everything and run no matter how important that other thing is, but it does have some content. And that content has to carry a responsibility for that guard or else there would be no reason for the guideline to exist. Let me ask you, to respond immediately and effectively to an emergency is a pretty broad direction and depends a lot on what the emergency is and the circumstances with respect to how to respond, the timing of response, how many people need to respond. You could have a prison riot and three or four inmates are pushing the button. You could have a fire. You could have numerous types of conditions where the guards have to assess what to do. I mean, they have, don't they have a duty, a multiple faceted duty to protect the guards from escaping, to protect the public, to protect the safety of the guards, to protect property. And an emergency in that context with those multiple duties seems to me would require a fairly broad range of judgments about what to do and what's best to do. Now, whether a guard did it appropriately in a given circumstance is beyond the point. It seems to me the first question is whether this duty falls within this discretionary function. Don't you agree with that? Absolutely, Your Honor. And so that's why we use the phrase facially mandatory duty. And we also, you know, openly admit that there is this implied discretion, it couched in the in the very nature of what it means to carry out your duties, really for any government agent. And so when you have an example, like the prison riot or the fire, absolutely, you know, we wouldn't see lawsuits going forward, because a government agent decided to put out a fire that endangered everyone's lives rather than, you know, running to stop a fight. The question really is, how far are we allowed to look at the facts of how a guard responded in a particular circumstance, if we were to conclude that the duty as framed and as imposed on the guards was a discretionary duty giving effect to the guards overall responsibilities. In other words, you seem to want us to go back and decide in a given circumstance, was it effective? And I'm suggesting, well, maybe it wasn't, maybe it wasn't appropriate, maybe it was negligent. But that isn't the test. Is it under the discretionary function? The question is whether the function the guard is exercising is a discretionary function. And that you have to measure by the nature of the definition of the duty in the overall context. And these multifaceted duties of a guard, I mean, it's not just to respond to a particular bell that a guard rings in itself. The duty is to respond to emergencies in a prompt and efficient manner. And that could mean to protect the public, it could mean to protect the inmates, it could mean to protect property. And it seems to me what's facing the guard is quite a judgment call. I mean, even even with respect to a given inmate, he could at eight o'clock every day ring that bell to get breakfast, and he's been doing it for two weeks. It seems to me that the guard in that context has some kind of discretion and judgment to make he doesn't have to jump up and be at that cell. And I don't know what you say the appropriate time is five minutes, three minutes. The protocols require certain timing. So what we have here is a claim that maybe he should have been there in five minutes, when he arrived in maybe over 10 minutes, I guess that's your allocation in the complaint. But it's hard to, it's hard to characterize that kind of duty as administrative. Right. So exactly, that is exactly what we're saying is that there is this discretion to decide how to respond in the best way possible. But what that discretion does not include is the facial violations of mandatory duties. If it were otherwise, then cases like rich from the circuit or polite from the Seventh Circuit, which is this court cited, or Colthurst, we would just say, well, there was some, you know, penumbral discretion included in these people's duties. And that means that the discretionary function exception just applies, and then the case is over. But that's clearly not the intent of the Federal Courts Claims Act, which was to create liability for this kind of negligent violation of duties. And that's what the Berkovitz test is formed around is, is there a mandatory duty? And if there is, are people violating it without some valid policy reason? So we're not saying that the juror of prisons or that the guards can't come back and say, you know, look, I was exercising permissible discretion. Absolutely, they can do that. But what they can't say is someone in my position might have been able to exercise discretion if the facts were a certain way. Therefore, the discretionary function exception applies without alleging any facts relating to a policy decision to be made. That would be like if counsel that seems to go to this negligent guard theory that's come up in certain cases, I don't see how that I don't understand your your facial mandatory duty argument. It seems like your case boils down to this negligent guard theory as soon when it was it's appropriately raised. So the negligent guard theory, I think there was some confusion with the government on this. That's not a new claim. That's just a name that one circuit gave to this type of claim. So the only reason we use that term in the brief was because that's the way the court decided to just sort of give it a understand and be on the same page. But it's absolutely the exact claim that Tyree has been making from square one. It doesn't really add any content at all. All it does is add a label. So tell us how you upon what you based and where I didn't see anything in the district court's opinions that dealt with that particular issue below. So can you point us to what in the record shows that was raised? And if it wasn't raised, why we should entertain it now? Are you talking about the term negligent guard theory? Well, whether it's the terms or the substance of it, tell us where that was made evident in the court and the trial court below. So I'm sorry, I think I understand your question correctly. But just to be clear, the term negligent guard theory is from the case Treisman from the Second Circuit. And so it's not a term that's been used in this circuit to refer to that claim. But it is the same type of claim that we're dealing with here where it's under the Federal Courts Claims Act. And the theory of the case is that there was a government agent who had a duty and they negligently did not complete that duty. All right. Well, let's say that this is the principle of the negligent guard theory. We won't worry about magic words. Tell us how this was raised before the district court below. I see what you're saying. So in Tyree's complaint, which you can find in the Joint Appendix, particularly on pages 13 and 14 of the Joint Appendix, contains a fact section which goes through what he said. And particularly paragraph 9 lays out most of the facts that are relevant at this point. And basically what that does is it talks about, I'd say paragraph 6 through 9 particularly, it talks about, you know, the order of events. It talks about when exactly it was that the assault began, when the button was pressed, approximately how long he was assaulted after the button was pressed. And then it basically states that the guards, you know, construing his complaint liberally because he was pro se, it states that the guards did not respond in a manner that's consistent with their mandatory duties. Counsel, this case is before us on dismissal, right? Yes. There's no summary judgment record. There were no affidavits by the guards or anything like that. Is that correct? There were affidavits by the guards. But even though this could have been a factual 12b1, it was actually styled as a facial 12b1. So for all intents and purposes, it's as if discovery did not happen because this is a purely legal motion to dismiss. Well, in their affidavits, then what did the guards say? Was it all within their discretion? No, so the guards actually alleged that they, one says he saw the alarm, responded immediately by going, Yeah, yeah, yeah. No, I know what you're talking about now. Well, that can all be put out in discovery. And, you know, if the district court finds that that's correct, grant summary judgment, right? Exactly. And that's what we're saying that the district court would be more appropriate to do is have that factual development before dismissing this because dismissing it on a legal motion to dismiss is a I'm sorry, I'm not sure if that's the tone that my time was over or not. We don't think you can finish the sentence. Thank you. To dismiss it on the legal motion to dismiss is to say, basically, that the fact that this penumbral discretion that's implied exists means that there's really no claim that you can make against the guard for exercising, you know, for basically ignoring his duties for any reason whatsoever. That's the wrong message under the FTCA that really misconstrues the discretionary function exception to the detriment of everyone who under the FTCA is supposed to have a claim for this type of negligent failure to complete their duties. And so what we're saying is the district court, it's really important that they actually do dive into the facts here, because when this court remanded the case the last time, the message was the facts matter, because this is not a case for just facial dismissal. There's actually a potential claim here. And so when the district court and dismissed the case again under a legal facial motion to dismiss it again sent a message that there is no claim here no matter the facts. And that's simply not true. Let me ask you, this is a motion under 12B1, is it? I'm sorry, yes, it is. Well, I know this is a fine point, but it may be material in this context. A motion under 12B1 is a jurisdictional motion that's decided by the court and does not depend on a summary judgment or 12 or factual findings by a jury. Those facts could be intertwined, but traditionally 12B1 is resolved by the court and the court can consider facts, look at facts and and dispose of the motion as it sees fit is as appropriate. It's not a 12B6 standard, as I understand it. Exactly, Your Honor. And under Kearns, the fact that this is like, as you mentioned, an intertwined jurisdictional and merit. In other words, the court has to make that decision. But the court in deciding whether it has jurisdiction has latitude to explore facts, to state facts, find facts. And it doesn't need to go in full discovery if it doesn't want to or it does. I mean, we could reverse and say it didn't have enough facts. But the notion that you put handcuffs on the court on some notion that it's like a 12B6 standard is simply wrong under the rules. It's not at all, Your Honor, and I apologize if that's what I was understood to say. What I'm saying is that under Kearns, if the district court has certain protections, it really is required to give the plaintiff. If it's a if the allegation is the complaint completely fails to elect sufficient facts, then the court is required to take the facts in the complaint as true. If the allegation is that the jurisdictional allegations in the complaint are false, then there still are these procedural protections that the court really is required to do, including this evidentiary hearing or at least diving into the evidence and finding and determining those jurisdictional facts. The fact that the district court did none of that means that Tyree simply didn't have the procedural protections he was entitled to. And those are important because they keep the DFE from being misconstrued to block claims that really should drive at least a motion to dismiss and the facts at least should be heard. OK, well, thank you. Judge American, I ask one more question before we switch over. Kind of along the same lines, since this is a jurisdictional issue, the district court is entitled to consider factual data. And as I understand the record, there has been some discovery here. For instance, the post orders went in camera to the district judge. You've got the affidavits from the guards and some there's some other things. If this case were to go back for further discovery, what exactly do you say is to be discovered? What needs to happen is these remaining unanswered factual questions where the government hasn't had to put forward an answer as to whether or not there actually was any policy decision being made or discretion that was being exercised at all. And when there's an evidence you're hearing in the government just has to put forward its evidence or its witnesses and they'll be available for cross examination. And finally, those crucial facts that that really are necessary for knowing whether or not the DFE applies will finally be out in the open. And then the district court can make the decision it deems best. So I mean, so what are you going to ask for if the case were to go back? Well, if the case is remanded, then the government has the option to file a factual motion to dismiss. And then that is when the appropriate discovery and factual determinations will be made. And that's really what's what's missing in this case is that fair procedural determination of the facts. But you can't tell us what further factual discovery you would intend to do. Oh, so not necessarily discovery in in like the paper swapping sense of the term, but that, you know, an option to either cross examine or otherwise get information from the witnesses who at this point have only submitted affidavits. No one, no one has ever had the chance to ask them, you know, what were they doing instead of answering the alarm or or get these facts from the government where if they're going to allege that they had this implicit discretion to to basically diverge from the policies of responding immediately, then someone should ask them the question, what is that policy determination that you made? Otherwise, it's saying because there might be some discretion in certain circumstances, every case that alleges negligence in this regard simply has to be dismissed. And that that by it, you know, that undermines the FTCA. It makes it useless. But don't we are we on the factual point? I presume the guards, if the guards stick with their story, they basically said they saw the alarm appear on the board there and they responded. And they responded by getting what two people to come there and they were there within a few minutes. Now, that's their position. Right. So when you say a policy or whatever, they said we're responding to a a a button that was pushed. And in our judgment, we carried out our responsibilities as guards of the prison by responding in this fashion. And apparently they got what, two guys or three guards together. And they got there in time to break up the fight. That's what they said. They broke up the fight. Right, Your Honor. But if that is the grounds for the government to win in this case, then the facial I'm talking about the factual issues. Right. Yes, Your Honor. I think that's their story. And I'm not sure when you ask the guard, what policy were you doing? And the guard is saying, well, I was carrying out my job as a guard and I was responding to an emergency. And I did respond. Now, that's where they are. They're not going to say anything different because they're number one, they're all consistent. And number two, there's no room for that. It's a philosophical question to ask the guard when you're sitting there carrying out your duties as a guard and you're made aware of an emergency in the prison. And why did you go there or what policy were you carrying out? Is that is that the right questions on discovery? It seems to me it's a legal question as to whether the responsibility being discharged by the guard is a discretionary job. And of course, if it's done negligently, that usually doesn't say much because we focus on whether they're trying to do carry out a discretionary job, at least from their point of view. But I'm just focusing on the question raised by Judge Agee. That is. Is there really a factual mystery here? It seems to me there's a legal mystery and and this case has twists. You've made some very good points, but I'm not sure that on a 12B1 motion suggesting that we should have a trial on it is usually not just the course. It's a it's a threshold question that the court decides as a matter of law and it can take into account any facts that are apparent. But if there are more facts that it needs and you think that it needs more, that's an argument you can make. But I'm not sure it's apparent what facts would be necessary at this point. We have a dispute. The inmate put in some time periods which were pretty close. I mean, we're talking about 10 minutes and the guards put in another time period, which is a few minutes apart. And nobody disputes the fact that the guards came there and broke up the fight. Now, what are we talking about that they should have run faster or gotten there more immediately or he wouldn't have been as injured as much if they had? It's hard to see what facts we're going to fill in on that. Right, Your Honor, so the reason this is a little bit jumbled is because there's two distinct paths. One is the legal question and the other is the credibility contest. So the legal question is whether or not even if everything Tyree alleged is true, this case should just be thrown out because the guards cannot have their use of their power questioned by the court because it's discretionary. That's separate from the credibility contest where which really should be the ground that this was fought on. But instead, the government filed a facial motion to dismiss. The reason the facial motion to dismiss should not prevail is the credibility contest really is, as you noted, where the real crux of it is. You know, the guards have their affidavits and Tyree has his extensive injuries and there should be credibility determinations on those facts. Those facts should be fully sussed out, weighed against each other and a determination made. The government, by filing a facial motion to dismiss, is short circuiting that and making the question whether or not they're entitled to, you know, respond to emergencies with a 10 minute delay and that's totally fine and courts will never look into that. And cases will always be dismissed at the motion to dismiss stage because there's some implicit discretion and therefore the DSE applies and therefore there can be no case. That is not the right resolution for this case. The right resolution is having those that credibility contest finally resolved by the credibility contest. If you have three people looking at an automobile accident, they're all going to tell a different story and they're all honest. Here you have he says they didn't get there for 10 minutes. Well, it takes some time to get there. Number one, it takes some time to summons and collect the other guards. So we're talking about a net of some. I don't know what we're taking some fast moving events and trying to create a factual issue that determines jurisdiction. It seems that it seems to me the question is a bigger one and you've laid it out appropriately in your argument. Anyway, why don't we hear from Mr. Just my I have a question before. Thank you. I just want to be sure that I understand the time sequence here. The is undisputed. Is it not that the call for relief was up for 10 minutes before the officers said they saw it? Is that right? Not exactly. Your honor. So what we the Tyree alleges that there was an assault that continued for 10 minutes after an emergency alarm was pressed. The government doesn't. Okay. So we and we take the allegations that the complaint is true at this point. Exactly. Right. Okay. So there's that. So and then what did the guards say that they looked at that? They got the call at eleven twenty seven. Is that what they say? Well, is there been any. I mean, one question we could be determined if they were sitting around having coffee or if they'd gone for a little break and didn't see when it first came on, then that would seem to be to be not not within the discretionary function exception. Exactly. But we don't know that. Exactly. Isn't that right? Exactly. That is exactly the point is we just don't know if what they were doing falls appropriately within the DSE. Because like play, they could have been sleeping, snacking or smoking, and those would not be appropriate. DSE protected activities. Okay. Thank you. All right. Thank you. Miss Minaj. All right. Mr. Breedenberg, we'll hear from you. Thank you, your honor. May it please the court. My name is Michael Breedenberg and I represent the appellee, the United States of America. And the legal question here is after the government raises subject matter jurisdiction and the discretionary function exception to the FTCA and establishes both prongs, whether plaintiff can defeat that defense without ever alleging any plausible negligence on the part of the government actors. So to be clear, and the discussion previous to this was talking about this being a facial challenge. And that is how this summary judgment, I'm sorry, the subject matter jurisdiction 12B1 motion was filed. It's a facial challenge to the plaintiff's complaint. And one- Can I ask you, counsel, can I ask you about the hypothetical and the time that I just talked to your colleague on the other side about. And I wonder if you can tell me, since we have the complaint, that's all we have. We don't have the officers saying, oh, no, we were there right away. We were there at just exactly the time. There were two minutes after the alarm went up, according to the plaintiff, whose allegations we accept is true here. And therefore, there is no violation. There's no violation of the regulation. So that's fine. But that's not what we have here. We have the officers saying they didn't see the thing until 1127. Now, that could be fine. They could be doing other things. They could be having another emergency. They could have a personal emergency. There could be a lot of reasons for it. But they could also be going outside and having a cigarette or talking to each other and being preoccupied and not looking and seeing or hearing or thinking that there was a real emergency. And if that was the case, how could they get the benefit of this discretionary function? That wouldn't be discretionary, would it? Well, so there's a lot there. And one thing that I wanted to kind of clarify, based on my reading of the complaint, there's a lot of talk about this 10-minute period. But if we actually look at what Mr. Tyree alleges, he alleges that he was being assaulted for five minutes before the button was ever pushed. And then he alleges that after the button was pushed, then the other inmate continued the assault for five more minutes. So even though the number 10 has been floating around, it looks like what Tyree actually alleges is about seven minutes. So that's just a point of clearance. Could they just sit and talk to each other for seven minutes, counsel? Say that again? Could they just sit and talk to each other or go out for a cup of coffee for seven minutes and not see the sign? So to move to the next point, so what we happen to know in this case, because of the procedural posture of it all being already— Counsel, if I can interrupt you, I didn't hear your answer to Judge Motz's question. So if the guards were having coffee and smoking a cigarette for seven minutes, are they entitled to the jurisdictional bar or not? The answer is possibly not. There are situations where if a plaintiff were to allege appropriate negligent acts against an officer— for example, they were sleeping, they were smoking, they were eating, they were looking at the computer, they were doing things that were inappropriate and not in the course of their duties— then that would be a situation where possibly the discretionary function exception would not apply to them. But the important part here in this case is that the plaintiff never alleged any kind of negligent, careless act on behalf of the officers. And he did know that— Counsel, counsel, excuse me, counsel, how would the plaintiff know that? Okay, well, the plaintiff in his complaint wouldn't have known it. At the very beginning, he would not have had an opportunity to know that. However, in this case, once the original motion to dismiss was filed and ruled upon by the district court and it came up to the Fourth Circuit the first time, the Fourth Circuit kicked it back for the purposes of discovery so that the plaintiff could enter into discovery and gather any information that he thought was appropriate. He did that. At the end of that initial discovery period, the government filed a subject matter jurisdiction motion based on 12B1 and the discretionary function. And the district court actually gave plaintiffs additional discovery time for the sole purpose of responding to the jurisdictional defense. So the plaintiff had two opportunities to gather any kind of information that he thought appropriate in order to challenge the government's defense. So in theory— Okay, that's very helpful. Was the plaintiff represented by counsel during that period? He was not at that time. He became represented by counsel for the appeal. But the government will represent that Mr. Tyree is not— Well, counsel—he was not represented by counsel on the first appeal to the Fourth Circuit. Is that correct? That is correct, Your Honor. So up until the filing of the briefs in this case, he was proceeding pro se. Is that correct? Yes. So what distinction do we draw between the plaintiff being a pro se plaintiff in the trial court and not a counseled plaintiff? Because I suspect if he were a counseled plaintiff from the beginning, we probably wouldn't be having this discussion today. That's a possibility, Your Honor. But what the government would point out is that Mr. Tyree does not appear, anyway, by the record to be an ordinary pro se litigant. He has shown throughout the course of this entire litigation over about almost six years that he is able to represent himself and continue to put forward his case. He, as you can tell through the discovery that he did ask for, he asked for an awful lot of things. And the government turned over everything that he asked for, including the stuff that was security-related that was provided to the court for in-camera review. Mr. Tyree may not have done everything that he needed to do in order to support his case, but he certainly had the ability to do that. He could have deposed the officers at the time of his discovery, either time during his discovery, but he chose not to do so. But the point is that I'm not sure that the court should put a lot of weight in his pro se status because Mr. Tyree has exhibited the ability to represent himself and put forward his case. Do you have any authority for that proposition? I've never seen a case which has said that the person was pro se, but he's a frequent flyer, and therefore we disregard his allegations and we hold him to the standards of being represented by counsel. Oh, certainly not, Your Honor. Do you have any cases like that? I don't have any case law, but the government is certainly not making that point that we disregard... I see. So we still give him the benefit of being pro se. We can give him the benefit of being pro se, but there are certain standards that he still would need to meet, and in this case, he would have to at least meet the pleading standard, the plausible pleading standard of some kind of negligence on behalf of the officers. In response to Judge Agee, you just conceded that it was possible that you would have a claim here if they were sitting around drinking coffee, etc., and we don't know whether they were. At this point... Well, we do know... Let me just say this to you, sir. I'm not a fan. We do know what the record says, that the gentleman was making his rounds. One of them. And he observed the light while making his rounds, but he wasn't smoking or drinking coffee. That's all we... We don't know that for sure either, do we? Yes, you stated... But you can both make your rounds and smoke and drink, right? Except that doesn't bar... When he's making his rounds and he sees the light while making the rounds, that's what he said. He was making the rounds on the B range, and as he came to the cell, he saw the light at 1127. Exactly the same moment that his colleague saw it in the headquarters, so that that in itself seems a little odd. Your Honors, I apologize to interrupt. I will point out that you are discussing this issue with each other. This is Mike Breedenburg talking right now, and I was not making arguments, so I apologize for that, and I would respectfully request that if there's a question for me, to please restate it because I sort of lost it. You may proceed. Thank you, Your Honor. So, Your Honors, at this point, the government would rest on its brief and just mention that the main point here is that in order for plaintiffs to defeat the discretionary function exception, he must be able to plausibly allege negligence, some sort of negligence act on behalf of the officers. In this case, he was given the opportunity to obtain that information and was unable to do so, and because of that, the case should be affirmed. The district court's decision should be affirmed. Thank you. Thank you, Mr. Breedenburg. Mr. Gans? Hello? Sorry, I lost you for a second. Yes, proceed. All right. Thank you, Your Honor, and may it please the court. I'd like to respond to a few points that have been raised so far. First and foremost, I'd like to clarify the facts in the complaint. Mr. Tyree's complaint very clearly states that there was an assault for five minutes, then the distress alarm was pressed, two minutes passed, there was another assault that continued for five minutes, his cellmate dragged him to a different place in a cell, a certain amount of time passed, and then very clearly in paragraph 24 of his complaint, which is on page 17 of his joint appendix, he says that prison staff failed to respond to the distress alarm for in excess of ten minutes. Very clearly, it's right there in the complaint, he alleged that prison staff did not respond for at least ten minutes, and I wanted to clarify that. Second, my second point is that no facts have been considered or found. The government's motion was an entirely facial, legal motion to dismiss, not a factual motion to dismiss. And in fact, last time that Mr. Tyree's case was before this court... He procedurally explained to me what that means. That's meaningless under the rules. In other words, this is not a 12b-6, it's a 12b-1. And the fact that somebody says facially, and you look at this, the court can look at anything that it wants, and it can order discovery, or it need not order discovery. But it seems to me, to get to the fine point that says a court is bound by the square allegations of a complaint, I mean, that's our creation if we did that. That is not a rule's creation. Your Honor, the government's motion to dismiss is at Joint Appendix, page 50, and the government very clearly stated in its motion to dismiss that it was accepting the facts as alleged by Mr. Tyree. And in fact, in making its determination on that motion, the district court did not make any factual determinations. And Judge Agee, you asked a line of questioning earlier in which you asked if the facts matter, and I think Judge Motz, your line of questioning is exactly right. The facts do matter. And this court has made clear that in these discretionary function exception cases the facts do matter. In this court's decision in Baum, the court made very clear that its determination on the negligent maintenance issue was based on the facts. This court explicitly said that and left open the possibility that under other facts, the outcome may have been different. Judge Motz, your line of questioning about if the prison officers were drinking coffee is exactly the point that the Seventh Circuit made in the Pelay case, which this very court cited favorably the last time that Mr. Tyree's case was before this court. This court and other courts have made very clear that the facts are important in these discretionary function exception decisions. And we simply don't have any factual determinations because the government short-circuited the fact-finding process by filing a purely legal motion to dismiss in which they accepted Mr. Tyree's facts as alleged. This, quite frankly, has become a credibility contest because the government has not provided any sort of policy-based rationale for delay here. Rather, the government has consistently rested on a factual assertion that the prison officers responded immediately. And this brings me to another point, and that's that even if we acknowledge that immediately might leave some implicit reservation, immediately cannot be a contentless concept. And in fact, the government has acknowledged that because the government's position consistently has been that the prison officers responded immediately. If immediately is contentless, then the affidavits of the prison officers can't mean anything. So immediately certainly has to have some sort of content. And in fact, that was this court's understanding in the Rich decision. This court in Rich acknowledged that even the most specific of mandates implicitly was discretion. In Rich, there hadn't been any discovery. And the government says, as I understood their argument, that Mr. Tyree had had the opportunity to do discovery and he just didn't do it. I mean, did he ask to take the depositions of the guards or of Mr. Nickerson or anybody else? No, Your Honor, he did not. And as Judge Moss pointed out, he was pro se at the time. And to be quite honest, I'm not entirely sure what the rules are in this prison, but it was certainly Mr. Tyree's belief that as a prisoner, he was not in a position and would not be allowed to depose prison guards. And that's the exact reason why he repeatedly asked the district court to appoint counsel and his repeated requests for the appointment of counsel were denied. I think, given that he was pro se, he actually did a pretty good job with discovery. But, to be honest, discovery is irrelevant here because the government chose to file a purely legal motion to dismiss in which they accepted Tyree's allegations that he laid out in his complaint. Even if that, we assume that to be correct, engage with your co-counsel earlier to tell us what exactly is to be discovered if this were to go back because the burden is on the plaintiff to establish his case. So, what specifically do you say is necessary for the district court to make a decision that's not before the court now? Your Honor, the factual determination or the discovery that needs to be done is simply what were the guards doing? My client has alleged that the guards took 10 minutes to respond and the officer's contention was that they responded immediately. And, in fact, there are actually some factual inconsistencies in the officer's affidavits. One said that they responded directly to this cell immediately. The other said that they responded by telling the first officer about the emergency alarm and then that officer went to the cell. So, there's already, certainly, just among the officer's affidavits some seemingly factual inconsistencies and that's what the district court will need to discover. Again, this government has to... Well, the district court isn't going to do the discovery. The plaintiff's got to do the discovery. So, I assume your answer is that you want to depose the two guards. That is absolutely right, Your Honor. The court does not need to do discovery but the court needs to find the facts. The government deprived the plaintiff of... I'm asking you as counsel for Mr. Tyree, you want to take the depositions of the guards. What else? Your Honor, at this point, that's all my client is really asking for. Now, of course, the government could set forth policy-based reasons explaining its delay but throughout this entire litigation that has not been the government's contention. The government's contention is that they responded immediately. My client's contention is that there was at least a 10-minute delay and my client's burden, and Mr. Bradenburg actually conceded this, my client's burden was simply to plead a plausible claim of negligence and a 10-minute delay is an eminently plausible claim of negligence. At this point, based on how the government has chosen to argue this case, it's purely a credibility contest. The district court needs to find the facts. We want to put the prison officers under oath, either in a deposition or a hearing and that's all my client's asking for and the court needs to make the credibility determination. All right. Thank you, Mr. Gans. I want to note that both you and Ms. Minich are part of the student program and I want to recognize the very good job you did. Both of you were very well prepared. You made a good presentation. We didn't get to see you in court and I wish we had that opportunity. We also are denied the opportunity at this point to come down into the well of the court and shake hands, which is a custom of our court and I miss that very much and it would be especially nice to see the two of you and welcome you to the court and hope you come back again and again, but thank you for your good work and for your good arguments and accept the greetings from the court by telephone. Also, to Mr. So we'll adjourn court for five minutes to proceed to the next case. Thank you, Your Honor. Thank you, Your Honor. Court will take a brief recess before hearing the next case. Conference recording has stopped.
judges: Paul V. Niemeyer, Diana Gribbon Motz, G. Steven Agee